IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

EMILY NANOUK,

              Plaintiff,

    vs.

UNITED STATES OF AMERICA,

              Defendant.

Case No. 3:15-cv-00221-RRB

**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION *IN LIMINE*
Dockets 287, 288, 301, 312**

## I.   INTRODUCTION

Before the Court are cross-motions for partial summary judgment, a motion *in limine* to exclude testimony by Plaintiff's expert witness, and a request for oral argument.  The Court is familiar with the factual and procedural background, which it will not repeat here.[1]  The motions have been fully briefed,[2] and oral argument has been requested,[3] but the Court finds that oral argument is not necessary to resolve the issues.

---

[1]  *See* Docket 263.  The Court acknowledges that Plaintiff alleges that the government has misstated and mischaracterized material facts.  Docket 301 at 14–21.

[2]  Dockets 287, 288, 289, 297, 301, 302, 304, 307, 309, 310, 311.

[3]  Docket 312.

## A.    Summary Judgment

Defendant seeks summary judgment on Plaintiff's trespass claim, and partial summary judgment on her nuisance claim.  Defendant further requests the Court to limit Plaintiff's recoverable damages to $45,000.[4]  Plaintiff seeks partial summary judgment as to liability for trespass and nuisance.[5]

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[6]  The moving party bears the initial burden of proof for showing that no fact is in dispute.[7]  If the moving party meets that burden, then it falls upon the non-moving party to refute with facts that would indicate a genuine issue of fact for trial.[8]  When considering the evidence on a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

## B.    Motion *in Limine*

Also before the Court is Defendant's Motion *in Limine* to exclude "opinions proffered by Plaintiff's proposed expert, Per Bjorn-Roli, for failing to meet Federal Rule

---

[4] Docket 287.
[5] Docket 301 at 40–48.  Defendant complains that Plaintiff's cross-motion is untimely. Docket 307 at 24.  While adherence to the scheduling order and local rules is preferred, the Court has opted to review all of the briefing in this instance, as the issues are all related.
[6] Fed. R. Civ. P. 56(a).
[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[9] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

*Nanouk v. United States*                                                        Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                Page 2
Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 2 of 21

of Evidence 702's threshold of relevance and reliability under the *Daubert* standard."[10] Plaintiff opposes the Motion, and Defendant has replied.[11]

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    a.    Their scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue;

    b.    The testimony is based on sufficient facts or data;

    c.    The testimony is the product of reliable principles and methods; and

    d.    The expert has reliably applied said principles and methods to the facts of the case."[12]

## II.   DISCUSSION

The Third Amended Complaint alleges three claims: Negligence, Trespass to Restricted Title, and Nuisance.[13] The government seeks summary judgment on the trespass claim, and partial summary judgment on the nuisance claim, for "multiple, independent reasons."[14] It also requests the Court to "limit Plaintiff's recoverable damages."[15] Plaintiff cross-moves for partial summary judgment on the government's liability for trespass and nuisance.[16]

---

[10] Docket 288 at 2.
[11] Dockets 289, 297.
[12] Fed. R. Evid. 702 (subject to changes effective December 1, 2023); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[13] Docket 300.
[14] Docket 287 at 23.
[15] *Id.* at 28–37.
[16] Docket 301 at 40–48.

*Nanouk v. United States*                            Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*    Page 3
Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 3 of 21

## A.  Trespass and Nuisance

### 1.  Trespass

Plaintiff's cause of action for "Trespass to Restricted Title" alleges that the government "placed hazardous substances upon Ms. Nanouk's Alaska Native Allotment without Ms. Nanouk's permission and knowledge," and that since July 2003, the government has "entered upon, possessed, and used Ms. Nanouk's Alaska Native Allotment for investigative and remediation purposes, without Ms. Nanouk's permission and without any compensation to Ms. Nanouk for the Government's entry, possession, and use."[17]

The government seeks summary judgment on the issue of trespass.  First, it argues that there is no evidence that the United States "placed hazardous substances" on Plaintiff's allotment without her permission.  Rather, the government suggests that Plaintiff herself tracked PCB to her own property when she crossed through the hotspot located on Air Force property.  Such a theory of causation, argues Defendant, does not support a trespass claim under Alaska law, which requires "a *direct* causal relation between the conduct of the actor and the intrusion of foreign matter upon the possessor's land" which is established where the conduct would damage another's property "in the usual course of events."[18]  The government argues that it neither encouraged nor had any control over

---

[17]  Docket 300, ¶¶ 34, 35.

[18]  Docket 287 at 24–25 (citing *Parks Hiway Enters., LLC, v. CEM Leasing, Inc.*, 995 P.2d 657, 664 (Alaska 2000)).

*Nanouk v. United States*                                                    Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                Page 4

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 4 of 21

Plaintiff's decision to ignore fences and "No Trespass" signs on Air Force Property, resulting in the migration of PCBs from the hotspot to Plaintiff's property.[19]

Alternatively, the government argues that Claimant's trespass claim alleges that the government has "entered upon, possessed, and used" her allotment for investigative and remediation purposes. The government argues that they did so only with her consent, and consent defeats a claim of trespass.[20] Moreover, CERCLA authorized Defendant's entry onto Plaintiff's property for environmental investigation and remediation.[21] Defendant notes that Plaintiff does not defend her "Entrance, Possession, or Use" claim in her Opposition brief.[22]

Plaintiff argues that it was the government's failure to act that led to the contamination,[23] but that, even if her travel over the hotspot resulted in contamination, which she describes as a genuine issue of material fact, the government is not entitled to summary judgment because Alaska law employs comparative negligence, which Plaintiff argues favors her in this matter.[24] Plaintiff also argues that she is entitled to partial

---

[19] *Id.* at 25.

[20] *Id.* at 26–28 (citing *Lee v. Konrad*, 337 P.3d 510, 523 (Alaska 2014)).

[21] COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY, 42 U.S.C. § 9604(e)(3).

[22] Docket 307 at 10.

[23] Docket 301 at 24.

[24] *Id.* at 21–22. Under Alaska law, comparative negligence is not a total defense to a claim, unlike the common law doctrine of contributory negligence. *See Kaatz v. State*, 540 P.2d 1037, 1046–51 (Alaska 1975); Alaska Stat. § 09.17.060 ("In an action based on fault seeking to recover damages for injury or death to a person or harm to property, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for the injury attributable to the claimant's contributory fault, but does not bar recovery.").

*Nanouk v. United States*
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*
Case No. 3:15-cv-00221-RRB
Page 5

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 5 of 21

summary judgment as to liability for trespass because the government maintained the nuisance.[25]

## 2. Nuisance

Plaintiff's cause of action for "Nuisance" alleges that the government "created a hazardous substance Hot Spot" adjacent to her property, and that those substances "travelled across the Government's property and onto [her] property, contaminating it."[26] She further alleges that the government's cleanup activities have "failed to completely abate the contaminants present at the Hot Spot, and hazardous substances remain in bedrock on the site to the current day," substantially interfering with her ability to access, use, and enjoy her Alaska Native Allotment.[27] She argues that the "toxic pool of PCBs" was located "directly upon a well-travelled path, unmarked and unfenced," that residents of Unalakleet as a whole travelled on this path, and that it was foreseeable that Plaintiff would access her property via the commonly used road and the public trail, as the only other access to the location was by water.[28] She argues that the government's "failure to investigate, identify, mark, contain, or remove the Hotspot was a direct and proximate cause of the trespass," because "the PCB would not have contaminated her property but for the nuisance . . . on the access trail."[29]

---

[25] Docket 301 at 40–47.
[26] Docket 300, ¶¶38, 39.
[27] *Id.*, ¶¶ 40, 41.
[28] Docket 301 at 23.
[29] *Id.* at 22.

Plaintiff disputes the alleged signage warning against trespassing, arguing that government records admit that all signage had been removed from the site on June 26, 1984, before Plaintiff began using the trail over the hotspot while building her cabin in the late 1980s.[30] She also disputes that she trespassed on Air Force property at all by using the trail, because "Tract L-1 remained public property."[31]

### 3. Analysis

"*Trespass*" has both a narrow and a broad meaning under Alaska law. "The narrow meaning refers to an unlawful entry upon the land of another. The broad meaning encompasses . . . any 'unlawful interference with one's person, property, or rights.'"[32] Trespass can also include "intrusion or invasion" of the "subsurface estate."[33] A *nuisance* is "a substantial and unreasonable interference with the use or enjoyment of real property."[34] According to the RESTATEMENT (SECOND) OF TORTS, a possessor of land is subject to liability for a nuisance caused by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and:

> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and

> (b) he knows or should know that it exists without the consent of those affected by it, and

---

[30] *Id.* at 15 (citing Docket 302-4 at 5 and Docket 302-7).
[31] *Id.* at 25.
[32] *Fernandes v. Portwine*, 56 P.3d 1, 6 (Alaska 2002) (internal citations omitted).
[33] Docket 301 at 21 (citing *Parks Hiway*, 995 P.2d at 664).
[34] *Riddle v. Lanser*, 421 P.3d 35, 44–45 (Alaska 2018) (citing Alaska Stat. § 09.45.255).

*Nanouk v. United States*                                                      Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                          Page 7

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 7 of 21

(c)      he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.[35]

Plaintiff argues that she is entitled to partial summary judgment as to liability for trespass because the government maintained a nuisance by failing to remediate the hotspot.[36] But her briefing concedes that "there are genuine issues of material fact as to the government's liability for the trespass of hazardous materials onto [her] property."[37] In contrast, the government argues that its "ownership and control over the PCBs terminated when they were tracked by travelers using the trail off Air Force property."[38] The government focuses on its failure to "place hazardous substances" on Plaintiff's allotment without her permission, arguing that Plaintiff cannot show "a *direct* causal relation" between the government's actions and the PCB contamination of her property "in the usual course of events."[39] But the government fails to acknowledge the broader definition of trespass, "unlawful interference" of one's property.

In *Parks Hiway* the Alaska Supreme Court considered the "issue of whether a supplier of a substance is liable for trespass when, after delivery to the buyer, the substance escapes and invades neighboring land."[40] The court opted to follow other jurisdictions which held that "courts do not impose trespass liability on sellers for injuries

---

[35] RESTATEMENT (SECOND) OF TORTS, § 839.
[36] Docket 301 at 40.
[37] *Id*. at 47.
[38] Docket 307 at 9.
[39] Docket 287 at 24–25 (citing *Parks Hiway*, 995 P.2d at 664).
[40] *Id*.

*Nanouk v. United States*                                                      Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                    Page 8

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 8 of 21

caused by their product after it has left the ownership and possession of the sellers."[41] Accordingly, in *Parks Hiway*, the court held that the fuel supplier could not be held liable for fuel leaking from faulty tanks after delivery to a gas station, reasoning that because ownership and control over the fuel terminated upon the product's transfer into the buyer's tanks, the seller bore no trespass liability for the fuel's subsequent migration onto neighboring property.[42] The court found no "*direct* causal relation" between the delivery of the fuel and the "intrusion of foreign matter upon the possessor's land."[43] Noting that actors assume liability only when they "set[ ] in motion a force which, *in the usual course of events,* will damage property of another," the court found that a supplier of gasoline "merely performed a delivery function which, 'in the usual course of events,' would not contaminate neighboring property."[44]

The government argues that, similar to the fuel supplier, its ownership and control over the PCBs terminated when they were tracked off Air Force property by travelers.[45] The Court finds this argument unpersuasive. In *Parks Hiway*, the ownership and control of the fuel was transferred from the seller to the gas station when it was delivered, and it was the faulty tanks owned by the gas station that caused the fuel to leak onto the plaintiff's property. Here, the PCBs were not intentionally "delivered" to a third party, they were spilled on the government's own land, and possibly on nearby land

---

[41] *Id*.
[42] *Id*.
[43] *Parks Hiway*, 995 P.2d at 664–65.
[44] *Id*. at 665.
[45] Docket 307 at 9.

*Nanouk v. United States*                                              Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*              Page 9

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 9 of 21

traveled by others. The Court is not convinced that tracking of PCBs was not foreseeable if it is true that the contamination was on a direct route to Plaintiff's property. Whether or not the PCBs were tracked from the point of the spill onto Plaintiff's property by the "usual course of events" remains a question of fact.

The Court declines to grant summary judgment to either party on the issues of trespass or nuisance, as the concepts are so intertwined in this matter that summary judgment as to one, without the other, does not change the trajectory of the case, or the nature of the damages. Moreover, there are genuine issues of material fact including: whether or not there was appropriate signage warning of the hazard; whether Plaintiff and her family ignored proper signage; whether they were trespassing on government property when they came into contact with the PCBs; whether the trail at issue remained public property; whether the government's cleanup activities have "failed to completely abate the contaminants present at the Hot Spot"; and whether hazardous substances remain in bedrock to the current day.

## B. Damages

Defendant requests that the Court limit Plaintiff's recoverable damages to the "sum certain" demand of the replacement value of Plaintiff's cabin (no greater than $45,000),[46] although the Reply brief suggests that Plaintiff's "original" demand was $1.7 million.[47] Defendant's Motion *in Limine* seeks to exclude Plaintiff's expert testimony regarding damages calculations, alleging that Mr. Bjorn-Roli's expert opinions are flawed,

---

[46] Docket 287 at 5.
[47] Docket 307 at 15.

*Nanouk v. United States* Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine* Page 10

Case 3:15-cv-00221-RRB Document 324 Filed 11/20/23 Page 10 of 21

and challenging the utility of his opinions to the trier of fact.[48]  Defendant does not dispute

the expert's qualifications, character, or methods of calculating land values.[49]

### 1. Equitable Tolling

This Court previously determined that the statute of limitations in this matter

was tolled in light of the June 2003 letter informing the government of the contamination,

to which the government did not respond until June 2015.[50]  The government argues that

Plaintiff should now be bound by the relief sought in that 2003 letter, which proposed "that

the Air Force build a new cabin for Ms. Nanouk," valued *by the government* at $45,000.[51]

The government argues that "equitable principles do not justify Plaintiff's $1.7 million

claim, presented more than ten years [after] her $45,000 demand, on much of the same

evidence."[52]

But Plaintiff argues that equitable tolling does not govern the amount of

damages.[53]  Moreover, on July 16, 2014, before the official denial of her claim, Plaintiff

filed a formal claim for total damages of $1.7 million.[54]  Plaintiff argues that because

---

[48]  The Court notes that in this case, as in any FTCA matter, the judge is the trier of fact, as there is no right to a jury.

[49]  Docket 297 at 2.  The Court chooses not to address the government's argument in its opening brief that "Mr. Bjorn-Roli's opinions have previously been discredited as 'based on wishful thinking, unrealized contingencies, speculation [and] conjecture[,]' by the Alaska Court System," as Defendant appears to have abandoned this argument in its Reply brief.

[50]  Docket 93; *see* Docket 304-2.

[51]  Docket 287 at 28 (citing Docket 36-5).  The Court notes that this letter actually was sent by the Native village of Unalakleet Management, and not by Plaintiff herself.

[52]  *Id.* at 30.

[53]  Docket 301 at 26–31 (citing *Avila v. Immigration and Naturalization Service,* 731 F.2d 616, 620 (9th Cir. 1984) (finding no prejudice to the government from allowing Plaintiff's amendment to relate back to the original FTCA claim)).

[54]  Docket 304-1.

*Nanouk v. United States*                                                      Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                     Page 11

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 11 of 21

28 C.F.R. 14.2(c) specifically permits claims to be amended "any time prior to final agency action," her "2014 filing related back to her 2003 claim, and because it was submitted prior to the formal denial of her claim or the filing of this case, she is not limited to the 2003 claim amount."[55]

In response, the government pivots, arguing now that Plaintiff's 2003 demand letter was *not* an "administrative claim," because it did not include "a claim for money damages in a sum certain."[56] Accordingly, it argues that her 2014 filing cannot "relate back" to 2003. But the government fails to acknowledge that the natural result of its own counter-argument is that the 2014 claim for $1.7 million established Plaintiff's only sum certain demand.

Alternatively, Plaintiff argues that "changes in expectation as to the severity and permanence of an injury qualifies as newly discovered evidence," and, under the FTCA, a Plaintiff may file suit or amend a damages claim "for an amount in excess of the 'sum certain' administrative claim amount where newly discovered evidence or intervening facts have occurred since the presentment of the claim."[57] Plaintiff argues that she could not know that she would be excluded from her property during cleanup or for how long, whether the property could be fully remediated, the presence of additional

---

[55] Docket 301 at 28.

[56] Docket 307 at 14.

[57] Docket 301 (citing *Cole v. United States*, 861 F.2d 1261, 1262 (11th Cir. 1988) (Although generally a plaintiff under the Federal Tort Claims Act may not seek greater damages than that sought in any prior administrative claim, an exception exists where 'the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency.' 28 U.S.C.A. § 2675(b).")); *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003).

*Nanouk v. United States*                                    Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*          Page 12

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 12 of 21

contamination south of her cabin discovered in 2013, the stigma of environmental bias, emotional turmoil, or the fact that the nuisance "would be permanent because full cleanup of the Hotspot is now impossible."[58]  The government suggests that Plaintiff clearly was aware of the PCB contamination in October 2003, and that Plaintiff should have foreseen the risk of greater PCB contamination when she made a demand for a new cabin in 2003.[59]  The Court finds this argument unpersuasive, and the government fails to cite any authority that a Plaintiff must be clairvoyant when making a demand for damages.

The Court finds that none of Defendant's arguments necessarily warrant limiting Plaintiff's damages to $45,000.

### 2.  Abatement and Remediation

The government next argues that Plaintiff cannot recover remediation damages because the United States already has remediated her property at its own expense, and that those remediation costs already exceed ten times the allotment's value.[60]  Plaintiff acknowledges that remediation damages are not at issue because she did not expend personal funds to remediate the contamination.  However, she cautions against any order that would provide the government with immunity from additional cleanup in the future,

---

[58] Docket 301 at 29–30 (citing Docket 303-1 at 55 ("PCB and POL contamination will remain in the fractured bedrock at Sites SS001 (Area C) and SS003 (Area A) under protective caps.  Because contamination will remain on site above acceptable levels, Sites SS001 (Area C) and SS003 (Area A) will not be suitable for UU/UE, and CERCLA five-year reviews would be required indefinitely.")).

[59] Docket 287 at 31.

[60] Id. at 32–33.

Nanouk v. United States                                                    Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion in Limine                    Page 13

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 13 of 21

should further contamination be found, or new technology developed to remove the nuisance.[61]

### 3. Diminution in Value

Under Alaska law, a party who is injured by an invasion of his property may choose to recover the diminution in value as damages, which is measured by "the difference between the value of the land before the harm and the value after the harm."[62] Plaintiff's expert appraiser, Per Bjorn-Roli, estimates that Plaintiff's property was worth $200,000 before the contamination, and lost 94 percent of its value ($188,000) as a result.[63] Mr. Bjorn-Roli's estimate is based on an assumption that the contamination occurred around 1980.

The government indicates that there is no dispute that the contamination existed by the mid-1980s.[64] But it argues that, because the FTCA "is intended to repay the amount of loss or injury sustained by a plaintiff as a proximate result of governmental misconduct which gave rise to the cause of action,"[65] it is only responsible for diminution in the value of Plaintiff's property based on the condition of the land as of 1990. In what it describes as "straightforward logic," the government argues that the value of the land "before the harm" refers to the value of the land *in 1990*, and "recoverable diminution in

---

[61] Docket 301 at 31–32.
[62] *Wiersum v. Harder*, 316 P.3d 557, 567 (Alaska 2013) (quoting RESTATEMENT (SECOND) OF TORTS § 929).
[63] Docket 287-11 at 4–5, 143.
[64] *Id.* at 33.
[65] *Felder v. United States*, 543 F.2d 657, 669 (9th Cir. 1976).

*Nanouk v. United States*                                          Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*          Page 14

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 14 of 21

value must be determined from this date and condition."[66]  It reasons that "harm" is defined as the change in the property's condition caused by the tortious conduct,[67] and the only "tortious conduct" Defendant can be held responsible for was "failure to identify and remediate the hot spot in a timely manner after 1990."[68]  The government suggests that its failure to conduct the cleanup sooner did not *cause* the contamination, but was merely a "response to already-existing contamination."  Therefore, because the property already was contaminated in 1990, and it is remediated today, the government argues that Plaintiff cannot recover for any damages caused by any trespass or nuisance prior to 1990,[69] and can show no damages for diminution in value.[70]

Accordingly, the government seeks to exclude Mr. Bjorn-Roli's opinion on the diminution in value of Plaintiff's property, because he compared the condition of the property to a "hypothetical pristine condition" although "it is undisputed that the property was not in a pristine condition in 1990."[71]  The government complains that Mr. Bjorn-Roli's loss of value calculations based on contamination that occurred in the 1980s "improperly compensates for pre-1990 conduct."[72]  Accordingly, the government seeks to exclude

---

[66]  Docket 288 at 7.
[67]  Docket 297 at 6.
[68]  Docket 287 at 33; *Nanouk v. United States*, 974 F.3d 941, 950 (9th Cir. 2020) (finding that "[b]y 1990, the Air Force and the Army Corps had decided to direct remediation efforts toward the North River Station, presumably after having addressed sites with more pressing environmental safety concerns.  As the record stands now, it appears that once the government reached that decision in 1990, its failure to conduct the clean-up in a timely manner thereafter was 'not the result of a policy choice,' but 'simply a failure to effectuate policy choices already made.'").
[69]  Docket 288 at 7 (citing *Nanouk*, 974 F.3d at 950).
[70]  Docket 287 at 34; Docket 307 at 20.
[71]  Docket 288 at 2.
[72]  Docket 297 at 5–7.

*Nanouk v. United States*                                             Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                Page 15

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 15 of 21

opinions proffered by Mr. Bjorn-Roli, because his opinions have not been updated to reflect that the United States is immune from liability for conduct before 1990.

Plaintiff deems this argument "an absurd reading of the 9th Circuit's decision," contrary to law,[73] and "an extraordinary display of bad faith and misrepresentation of both the law of appraiser expert testimony and the facts of this case."[74] She argues that "[t]he government misrepresents the holding in *Nanouk*," and that there is no such limitation in the Ninth Circuit decision regarding the damages claims sustained by the pre-1990 nuisance and trespass.[75]

The Ninth Circuit opinion found discretionary function immunity shielded the government for contractors' conduct between 1957 and 1978, and its own *inaction* between 1978 and 1990.[76] But Plaintiff argues that there is an identifiable difference between the period for establishing liability and the period for which damages are recoverable,[77] arguing that "the immunity is as to negligence, not the damages resulting from the pre-1990 omissions."[78] Plaintiff maintains that the expert's use of a hypothetical unimpaired condition is a "standardized assessment tool used by property appraisal experts," which is valid under Rule 702 and *Daubert*. She further argues that "the use of a hypothetical assumption that the before value of the property was unimpaired is required

---

[73] Docket 301 at 32.
[74] Docket 289 at 2.
[75] *Id*. at 11.
[76] Docket 301 at 32 (citing *Nanouk*, 974 F.3d at 945).
[77] *Id*. at 35 (citing *Fairbanks N. Star Borough v. Lakeview Enters.*, 897 P.2d 47, 59 (Alaska 1995)).
[78] *Id*. at 33.

*Nanouk v. United States*                                      Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                  Page 16

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 16 of 21

when dealing with contaminated property," and that the "government's argument to the contrary is disingenuous."[79]

The Court finds that government's arguments fail for several reasons. First, it fails to acknowledge the practical difficulties of identifying the condition of the property in 1990, in light of the fact that the hotspot was not identified until 2003. Moreover, the logical result of Defendant's argument suggests that when it started cleanup in 2003, it only would have been required to restore the property to the state of contamination *as it existed in 1990*. This would seem to make little sense in the case of PCB contamination.

Finally, Defendant's arguments suggest that its obligation to remediate the property is completely unrelated to any responsibility for having caused the contamination in the first place. According to the government's reasoning, it would have borne no responsibility for cleaning up the contamination, because it could not be held responsible for causing the contamination in the first place.[80] But it is unlikely that the government would have spent millions of dollars on remediation to clean up property for which it bore no responsibility. The Court declines to analyze this case as if nothing prior to 1990 happened. The Ninth Circuit's holding found that the discretionary function exception excused the government from commencing cleanup prior to 1990; it does not hold the

---

[79] Docket 289 at 8–12.

[80] The government attempts to bootstrap a case involving a statute of limitations to justify its position, by describing the injury as beginning "before the government's immunity ran." Docket 301 at 34–35 (citing *FDIC v. Laidlaw Transit*, 21 P.3d 344, 356 (Alaska 2001) (The Alaska Supreme Court recognized that "injuries from seeping pollutants may be difficult to discover," but "the discovery rule adequately addresses this problem by delaying a cause of action's accrual until the plaintiff is aware, or reasonably should be aware, of its existence.")).

*Nanouk v. United States*  Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*  Page 17

Case 3:15-cv-00221-RRB  Document 324  Filed 11/20/23  Page 17 of 21

government harmless for causing the contamination in the first place. While the Ninth Circuit's holding may limit damages that Plaintiff may seek prior to 1990, as discussed below, even such damages remain a question of fact.

With respect to the opinions of Plaintiff's expert, the Court is unpersuaded at this point that his opinions would be of no use to the Court at trial.

### 4. Loss of Use

The value of the loss of the use of property under Alaska law may be measured by the fair rental value of the property for the period of lost use, although actual loss of ability to use a property may be required.[81] Alaska law also recognizes loss-of-use damages for subsistence property *without* specific proof that the property would have been used during the period of lost opportunity.[82] But the government argues that Plaintiff cannot show "lost use" damages for the period before 2003, because Plaintiff admits to using "all of her available time in the spring, summer, and fall on her allotment" from 1963–2003, when she informed the Air Force of the distinctive odor and discolored soil at the hotspot.[83] The government argues that *Chenega* does not apply because Plaintiff did not lose any "use of the land" before 2003.[84]

---

[81] *See Ben Lomond, Inc. v. Campbell*, 691 P.2d 1042, 1045 (Alaska 1984).

[82] *See Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 778–78 (Alaska 1999) (Alaska Native corporations unable to use subsistence lands following the Exxon Valdez oil spill could recover lost-use damages absent specific proof of probable continuous use). But the government notes that the Corporations in *Chenega* had been unable to use their property, even for intermittent, non-economic purposes, during the Exxon Valdez cleanup. Docket 297 at 8 (citing *Chenega Corp. v. Exxon Corp.*, 991 P.2d at 778–79, 789, 793–94).

[83] Docket 288 (citing Docket 288-2, Docket 288-3); Docket 287 at 37 (citing Docket 152-26 at 16–17).

[84] Docket 297 at 8.

*Nanouk v. United States*                                                   Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                    Page 18

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 18 of 21

As a result, the government again seeks to exclude the testimony of Plaintiff's expert, arguing that Mr. Bjorn-Roli's opinion about the lost-use rental value of the property for the years 1980–1989 is irrelevant following the Ninth Circuit's limited remand for conduct beginning in 1990, and that his opinion about the lost-use rental value of the property for the years 1980–2002 is unreliable for lack of factual support because Plaintiff used the property throughout this period.[85]  It also argues that Mr. Bjorn-Roli's opinions about the rental value of Plaintiff's land during the years when Plaintiff used her property will not assist the trier of fact because Plaintiff's damages cannot include loss of use for that period.[86]  Defendant argues that "there is no factual support for Mr. Bjorn-Roli's newly disclosed opinion that the property was unmarketable *before* the contamination was known, rendering this opinion inadmissible."[87]

Plaintiff complains that the government "erroneously conflates [her] ability to access her property before 2003 with the appraisal term of art, 'lost use.'"[88]  Plaintiff argues that "loss of use" in real estate values does not refer to what the owner does on the land, but rather whether the land has a "substantial use value."[89]  In Alaska, "lost use for [Native] corporation lands includes impairment of the ability to preserve the land."[90]  The Supreme Court of Alaska made it clear, following the EXXON VALDEZ oil spill, that

---

[85] Docket 288 at 2.  Defendant notes that "Mr. Bjorn-Roli's estimates of lost-use rent for the years 1980–2002 total $295,330 and represent more than half of his $547,448 total-market-rent estimate." *Id*. at 10.
[86] Docket 297 at 9 (citing RESTATEMENT (SECOND) OF TORTS § 929 (1979)).
[87] *Id*.
[88] Docket 301 at 38.
[89] *Id*. at 40 (citing *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769 (Alaska 1999)).
[90] *Id*. at 38 (citing *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769 (Alaska 1999)).

*Nanouk v. United States*                                                    Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                Page 19

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 19 of 21

impairing a land's preservation use is compensable, and "the value of preserving wilderness" is "a value use in itself."[91]  In cases such as this one, "owners may prove lost-use damages by nonstandard methods," including expert calculations "based on a percentage of the land's market value."[92]

The Court finds questions of fact with respect to the lost use of Plaintiff's allotment, including the role of "land preservation" in the case of Native land.  And, Plaintiff's expert may be able to shed some light on the issue of valuation.  The Court notes the government's argument that the lost use calculations prior to 1990 are irrelevant because the United States is immune from damages for conduct before 1990.[93]  The government may be correct on this point.  However, the government also acknowledges the Court's "equitable power to fashion appropriate remedies on a 'case-by-case basis,'"[94] although FTCA permits only "money damages."[95]

## III.   CONCLUSION

This matter has been pending for eight years, with the circumstances persisting for decades.  The parties have been unable to resolve the matter between them. This Court, as the finder of fact, may require expert assistance to calculate any damages that may be awarded, and, in doing so, will be able to evaluate the relevance and accuracy

---

[91] *Chenega*, 991 P.2d at 794.
[92] *Id.* at 795.
[93] Docket 288 at 11.
[94] Docket 307 at 12.
[95] *Id.* (citing 28 U.S.C. § 1346(b)).

*Nanouk v. United States*                                                         Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                     Page 20

Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 20 of 21

of the opinions rendered.  Accordingly, the Motion *in Limine* at Docket 288 is DENIED WITHOUT PREJUDICE.

For the reasons discussed in this Order, the parties cross-motions for Summary Judgment at Dockets 287 and 301, and the request for oral argument at Docket 312, also are DENIED.

IT IS SO ORDERED this 20th day of November, 2023, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*Nanouk v. United States*                                                      Case No. 3:15-cv-00221-RRB
Order Denying Cross-Motions for Summary Judgment and Motion *in Limine*                    Page 21
Case 3:15-cv-00221-RRB   Document 324   Filed 11/20/23   Page 21 of 21