IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EMILY NANOUK,<br><br>                Plaintiff,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | Case No. 3:15-cv-00221-RRB<br><br>**ORDER REGARDING<br>MOTIONS *IN LIMINE*<br>(Dockets 313, 314, 315,<br>316, 318, 320 & 322)** |

## I. INTRODUCTION

Before the Court are seven motions *in limine*. Trial is scheduled for February 12, 2024. The parties and the Court are familiar with the factual and procedural background, which will not be repeated here.

"A motion *in limine* is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area."[1] Motions *in limine* are part of a "district court's inherent authority to manage the course of trials."[2] As Plaintiff has acknowledged, "the motion *in limine* originated with attempts to prevent prejudicial evidence from interfering with a fair and impartial jury verdict in civil litigation."[3] In the case of a bench trial,

---

[1] *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *see also* Fed. R. Evid. 401, 403.
[2] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).
[3] Docket 346 at 2 (citation omitted).

therefore, this threshold ruling is "generally superfluous."[4] Moreover, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."[5] Accordingly, the Motions *in Limine* are DENIED without prejudice. However, the Court makes the following observations, which should influence the parties' approach to trial.

## II. DISCUSSION

**A. Defendant's Motion to Preclude Contamination Issues Outside Area C (Docket 313)**

Defendant seeks to preclude from trial issues arising from contamination outside of the area defined as "Area C."[6] Defendant argues that Plaintiff's claims stem from alleged damages from the Hot Spot, and the Court should prevent Plaintiff from expanding the issues for trial with theories of contamination outside of Area C. Defendant complains that Plaintiff's expert speculates about other contamination that may exist outside of Area C, despite having no evidence, and having performed no testing. Defendant asks that the Court "prevent Plaintiff from using trial to air general grievances and unsubstantiated fears about hypothetical contamination on her land and in the Unalakleet area outside Area C."[7] Defendant specifically seeks to preclude testimony by Plaintiff's expert, Bjorn Bjorkman, regarding any contamination that "may or may not have occurred"

---

[4] *Heller,* 551 F.3d at 1112 (noting that such rulings still may be appropriate for "logistical and other reasons").
[5] *Luce,* 469 U.S. at 41.
[6] Area C includes the PCB Hot Spot, present on Air Force Property, and associated contamination that spread from the Hot Spot, as indicated on the relevant diagram. *See* Docket 313 at 5.
[7] Docket 313.

outside of Area C, as well as any testimony by Plaintiff's real estate expert, Per Bjorn-Roli, which relies upon the opinion of Bjorkman. Defendant argues that "Plaintiff's Complaint limits itself to allegations and causes of action arising solely from contamination of Area C," and that "Plaintiff's expert opinions regarding contamination outside Area C are unhelpful to the trier of fact because they are inadmissibly speculative" under F.R.E. 702.[8] Defendant argues that "an expert's 'unsupported speculation and subjective beliefs' must be excluded."[9] Finally, Defendant argues that, even if other contamination exists, Plaintiff has no evidence linking that contamination to Defendant.[10]

Plaintiff opposes the motion, arguing that Defendant's argument "ignores the science of contamination and ecotoxicology, and the facts newly discovered."[11] She argues that her Complaint provided sufficient notice of liability regarding other sources of contamination on her property.[12] She argues that she has alleged sufficient facts to provide notice of her intent to pursue relief for any hazardous substances that have damaged her allotment, noting that Defendant's environmental expert, Michael Rafferty, noted in his report that he identified a "buried vehicle" and a drum found on Plaintiff's property.[13]

The United States "seeks to avoid mini-trials about marginally relevant issues at other sites, and airing general grievances about contamination in the Unalakleet

---

[8] *Id.* at 8, 11.
[9] *Id.* at 10 (citing *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001)) ("Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs.").
[10] Docket 313 at 12.
[11] Docket 330 at 5.
[12] *Id.* at 10.
[13] *Id.* at 13.

Nanouk v. United States　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*　　　　　　　　　　　　　　　　　　　　　　　　　Page 3
Case 3:15-cv-00221-RRB　　Document 348　　Filed 12/27/23　　Page 3 of 15

area that will result in undue delay,"[14] and the Court agrees that the parties should not waste time on side-quests. But, based on the diagram in Defendant's motion,[15] the overlap between "Area C" and Plaintiff's allotment is very small. Most of Area C is outside the allotment, and most of Plaintiff's allotment is not in Area C. Moreover, Area C appears to be an area *unilaterally identified by the government* for remediation purposes.[16] If Plaintiff argues that government contamination may be located on areas of her allotment outside of Area C, the Court will allow her to do so.

**B.      Defendant's Motion to Exclude Personal Injury Claims (Docket 314)**

Defendant seeks to exclude evidence and argument of alleged personal injury, noting that Plaintiff has not disclosed medical experts to support personal injury claims.[17] Defendant argues that "for every unsupported personal injury claim that Plaintiff or her family introduces, the United States will have no choice but to spend time and resources cross examining witnesses about personal injury claims that fail as a matter of law."[18]

But Plaintiff argues that, although they are not seeking damages for the various maladies that her family believes may have been caused by the contamination, "she has suffered and continues to suffer from the fear that she and her family's lifespans have

---

[14] Docket 341 at 10.
[15] Docket 313 at 5.
[16] "The Hot Spot and the areas surrounding Ms. Nanouk's cabin, trail, and the main road were designated by the Government as 'Area C' of the NRRRS remediation." Amended Complaint, Docket 300 at ¶ 20. "Since on or about July 2003, the Government has designated Ms. Nanouk's Alaska Native Allotment as "Area C" of the NRRRS contaminated site . . ." *Id*. at ¶ 35.
[17] Docket 314 at 3.
[18] *Id*. at 4.

*Nanouk v. United States*                                                          Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*                                                                      Page 4
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 4 of 15

been shortened and encumbered by the exposure to dangerous contaminants over 20-plus years."[19] She notes that the "Agency for Toxic Substances and Disease Registry has found PCBs cause a variety of toxic responses, including some that mirror the illnesses suffered by the Nanouk family."[20] Moreover, she argues, "damages for nuisance include damages for annoyance, inconvenience, and discomfort."[21] Citing state caselaw, she argues that "once a cause of action for trespass or nuisance is established, a landowner may recover for annoyance and discomfort, including emotional distress or mental anguish, proximately caused by the trespass or nuisance, even where the trespass or nuisance involves solely property damage."[22] In short, Plaintiff is not pursuing a personal injury claim, but she argues that her fear of the contamination, brought on in party by her family's personal research into the health risks associated with PCB exposure, is relevant to her claim of loss of use and enjoyment of her allotment.[23] She argues that testimony of her expert exotoxicologist, Mr. Bjorkman, regarding the effects of contaminants on human beings is relevant to her fear of exposure to the hazardous chemicals, which is part of her theory of damages.[24]

The Government stresses that "*evidence* as to whether she and her family members actually suffered illnesses from PCB exposure is superfluous and irrelevant."[25]

---

[19] Docket 332 at 5.
[20] *Id*. at 8.
[21] *Id*. at 10.
[22] *Id*. at 10–11.
[23] *Id.* at 12.
[24] *Id.* at 14–15.
[25] Docket 342 at 4.

*Nanouk v. United States*  Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*  Page 5
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 5 of 15

The Court notes that there are no personal injury claims involved in this case. Accordingly, medical evidence of any family member with respect to various conditions is unnecessary. However, the Court is reluctant to issue any order prohibiting Plaintiff from testifying as to her beliefs, which influenced her state of mind. To the extent that various maladies of Plaintiff's family members have played a role in Plaintiff's reluctance to use her allotment, the Court believes it is capable of compartmentalizing any suggestion of personal injury accordingly. The parties are cautioned that any foray into the medical history of Plaintiff or her family members will not be permitted.

C.  **Defendant's Motion to Exclude Expert Opinions Regarding Remediation (Docket 315)**

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> a. Their scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue;
>
> b. The testimony is based on sufficient facts or data;
>
> c. The testimony is the product of reliable principles and methods; and
>
> d. The expert has reliably applied said principles and methods to the facts of the case.[26]

Defendant seeks to exclude "certain opinions of Plaintiff Emily Nanouk's expert, Bjorn Bjorkman, about the **design, implementation, reasonableness, and/or**

---

[26] Federal Rule of Evidence 702 (subject to changes effective December 1, 2023); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*Nanouk v. United States*　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*　　　　　　　　　　　　　　　　　　　　　　　　Page 6
Case 3:15-cv-00221-RRB　　Document 348　　Filed 12/27/23　　Page 6 of 15

**effectiveness of the remedial approach** or efforts at the North River Relay Station," arguing that they do not meet the *Daubert* standards.[27] Defendant argues that Mr. Bjorkman is not qualified to offer expert opinions on these topics, because he is not an engineer, and does not design, implement, or conduct remediation on contaminated sites.[28] Defendant argues that Mr. Bjorkman's degrees in environmental biology and aquatic ecology and limnology, and his expertise in evaluating the risks of contaminants to the environment, is a distinct skillset from expertise in designing and implementing remediation.

Plaintiff suggests that the Government ignores Mr. Bjorkman's expertise "in finding and locating environmental contamination caused by PCB's [sic] and determining its risks to human health and the environment."[29] "Mr. Bjorkman studies the effects of toxic chemicals on biological organisms, the community, and the ecosystem."[30] Plaintiff argues that the concept of "environmental remediation" cannot be condensed into a single act, but rather requires "investigation, identification of the contaminant, and analysis and risk to human health the contamination poses."[31] Plaintiff explains that under CERCLA, response and remediation procedures follow a structure of various phases.[32] Plaintiff

---

[27] Docket 315 at 2.
[28] *Id.* at 5.
[29] Docket 328 at 5.
[30] *Id.* at 10.
[31] *Id.* at 5.
[32] These phases include: discovery and notification; removal site evaluation; removal action; remedial site evaluation; establishing remedial priorities; remedial investigation/ feasibility study (RI/FS) and selection of remedy; remedial design/remedial action, operations and maintenance; and planning and implementing off-site response actions. Docket 328 at 17 (citing generally 40 C.F.R. §§ 300.405–440).

argues that the Government's expert is an engineer whose expertise is in designing and implementing remediation technology *once contamination is identified*. Mr. Bjorkman, in contrast, is an expert in identifying and analyzing the risk posed by contamination, which includes an opinion on **when and how to remediate**.[33]

But Defendant's reply brief argues that Plaintiff fails to identify the "commonly accepted principles and methodologies" that Mr. Bjorkman employed, and Mr. Bjorkman failed to identify any specific way in which the remedial approach at NRS was deficient or flawed. Defendant argues that Mr. Bjorkman "does not identify any environmental practices or standards, rules, regulations, or laws that were violated or not followed during the remediation efforts at NRS."[34] Rather, "Mr. Bjorkman's opinions about the design, implementation, reasonableness, and/or effectiveness of the remedial approach or efforts at NRS are . . . [based] solely on the length of time it took to discover the hotspot on Air Force property without explanation or support for why this delay indicates an ineffective remediation plan."[35]

As Plaintiff notes, "rejection of expert testimony is the exception rather than the rule."[36] This Court, as the finder of fact, will require expert assistance to understand the CERCLA investigation process, and in doing so will be able to evaluate the relevance and accuracy of the opinions rendered. Defendant will have the opportunity to challenge

---

[33] *Id.* at 6.
[34] Docket 347 at 9.
[35] *Id.* at 7.
[36] Docket 328 at 12 (citing Fed. R. Evid. 702) (Notes of Advisory Committee on 2000 amendments).

Mr. Bjorkman's testimony at trial. The Court declines to limit the expert testimony at this juncture. The Motion at Docket 315 is DENIED.

### D. Plaintiff's Motion to Preclude Argument of Cleanup Standard (Docket 316)

Plaintiff seeks to bar the Government from asserting that the cleanup standard at the NRRRS was higher than 1 part per million ("ppm"), noting that "at various depositions throughout the pendency of the case, the government has referenced a cleanup standard for PCB contamination at the NRRRS of 50 ppm."[37]

Defendant opposes the motion, arguing that "PCB cleanup standards vary depending on the site conditions and intended uses after remediation" and can be as high as 50 ppm for "'low occupancy areas' secured by a fence and signs."[38] Defendant concedes that the ADEC's goal of 1 ppm for NRRRS cleanup was the "strictest standard" for PCB remediation, but that other standards are relevant to the nature of the handling and disposal of the waste. It argues that other cleanup standards are "highly relevant to Plaintiff's nuisance claim and damages," suggesting that the 4 ppm concentration of soil found on Plaintiff's property must be considered in the broader context of the various standards when considering now much of a nuisance the contamination was, and what damages may be appropriate.[39]

---

[37] Docket 316 at 3.
[38] Docket 325 (citing 40 C.F.R. § 761.61(a)(4)(i)(B)(2)) ("Bulk PCB remediation wastes may remain at a cleanup site at concentrations >25 ppm and ≤50 ppm if the site is secured by a fence and marked with a sign including the $M_L$ mark.").
[39] Docket 325 at 4.

Nanouk v. United States  Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*  Page 9
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 9 of 15

Plaintiff's sole concern about the mention of various PCB cleanup standards is that it "would confuse the issues and mislead the factfinder."[40] As the Court is the factfinder in this matter, Plaintiff's concern is unnecessary.

E. **Plaintiff's Motion to Preclude Mention of Inherited Allotment (Docket 318)**

Plaintiff moves to bar the Government from discussing her ownership of a second Alaska Native Allotment, arguing that "it is irrelevant to this matter, would needlessly confuse and mislead the factfinder, and would likely result in undue prejudice to Ms. Nanouk."[41] Plaintiff suggests that "the concept of Native greed has permeated popular culture and eluding [sic] to Ms. Nanouk's second allotment would reinforce this stereotype, affecting her ability to receive a fair trial."[42] Plaintiff reiterates that "the court should disallow reference to her inherited property at trial to avoid any ethnic bias it may engender."[43]

Once again, the Court is the factfinder in this matter. There is no jury. Notwithstanding the irony of bringing the second allotment to the attention of the factfinder *via* this motion, the parties are assured that this Court is not prejudiced by Ms. Nanouk inheriting her husband's Native Allotment(s).[44] In the event the parties do need to reference any other allotment owned by Ms. Nanouk, which seems unlikely, the parties need only clarify which allotment they are discussing.

---

[40] Docket 316 at 2, 3, 4.
[41] Docket 318 at 1.
[42] *Id*. at 5.
[43] *Id*. at 6.
[44] Defendant's brief indicates that there are two additional allotments inherited by Plaintiff. Docket 326 at 2.

*Nanouk v. United States*     Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*     Page 10
Case 3:15-cv-00221-RRB     Document 348     Filed 12/27/23     Page 10 of 15

**F.     Plaintif's Motion to Preclude Use of Deposition Video (Docket 320)**

Plaintiff next seeks to bar the Government from using video recordings of the 2023 depositions of two expert witnesses, arguing that the recordings were improperly noticed under Federal Rule of Civil Procedure 30(b)(1), which states that "[t]he party who notices the deposition must state in the notice the method for recording the testimony." Plaintiff alleges unfair surprise to both experts, who did not expect to be video recorded via Zoom.[45]

Plaintiff argues that "a statement that a deposition will be recorded by Zoom fails to supply proper notice that the deposition will be video recorded," as the type of recording over Zoom may be stenographic, audio, or audio-video.[46] Plaintiff notes that while her counsel and the experts were notified that the 2018 depositions would possibly be recorded by "audio-video,"[47] the 2023 deposition notices merely stated that they would be "Recorded by 'Zoom'."[48] Both 2023 depositions were then video recorded.[49] Plaintiff argues that Zoom allows for video *conferencing*, but "common parlance refers to the program's use as a communication method and not typically to a recording medium,"[50] and does not alleviate the need for a court officer to be present or the video taken to be certified.[51] Moreover, Plaintiff argues that the phrasing of the 2018 subpoenas indicates

---

[45] Docket 320.
[46] Docket 326 at 6.
[47] *See* Docket 321-4 at 2 (Second Amended Notice of Deposition of Per E. Bjorn-Roli, clarifying audio-visual recording).
[48] Docket 326 at 6.
[49] *Id.* at 3.
[50] Docket 320 at 6.
[51] *Id.* at 5.

Nanouk v. United States                                                                                       Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*                                                                                                           Page 11
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 11 of 15

that the Government knows to identify the potential of a video recording, and failure to do so in the 2023 subpoenas violates Rule 30.[52]

Defendant argues that a certified court reporter and a certified videographer recorded the Zoom depositions.[53] It argues that the use of Zoom for video-recorded depositions is "well-known and widespread," relying on four district court opinions from around the country that have found referencing "Zoom" in a deposition notice or subpoena complied with Rule 30(b)(3)'s notice requirement on the specific facts of those cases.[54]

There clearly was not a meeting of the minds with respect to the video recording of Zoom depositions, and the Federal Rules of Civil Procedure are undoubtedly slow to catch up with technological advances. If nothing else, this miscommunication is a lesson to be clearer when noticing depositions, and—in the modern world—to always expect to be video recorded. And given that Mr. Bjorn-Roli's deposition took place several hours after Mr. Bjorkman's deposition, one hopes that Mr. Bjorn-Roli would have been given some notice by Plaintiff's counsel that a video recording was likely.

Nevertheless, the Court expects the experts will testify live at trial. To the extent that the video recordings of the Zoom depositions are necessary for use under Federal Rule of Evidence 613, nothing prohibits their use. And finally, once again, this is a bench trial. Plaintiff's concerns that Zoom recordings provide "an inside look into all the attorneys' home spaces, their tastes in books, photos of their families, their likely outdated

---

[52] *Id.* at 7.
[53] Docket 334 at 2.
[54] *Id.* at 4–5.

CD collections, and the occasional child or pet that inevitably makes its way into the camera," are less of a concern in the absence of a jury.

G.   **Plaintiff's Motion to Preclude Assertion of Trespass (Docket 322)**

The Government has suggested that Plaintiff is responsible for the contamination because she allegedly trespassed on Air Force property to access her allotment. Plaintiff seeks an order barring the Government from alleging that she trespassed on the NRRRS to access her property, arguing that her access was solely across land open to the public, that she lacked intent to trespass, that there were no warnings posted, that any trespass is irrelevant, and that even if relevant it could lead to unfair prejudice, confusion of the issues, or would mislead the factfinder.[55] Plaintiff explains the two types of land used to access her property, including the public roadway and "Tract L-1," which she argues is also public land.[56]

The Government opposes the motion, arguing that the Court must adjudicate whether Plaintiff trespassed in order to rule on the motion, rendering it a late-filed summary judgment motion.[57] It argues that a genuine dispute exists regarding whether the road or the portion of Tract L-1 were open for public use. It further argues that whether Plaintiff trespassed is an element relevant to Defendant's discretionary function argument, because if she was trespassing and the Government had no knowledge of her presence, it may justify the designation of this property as a lower priority than other areas that involved human

---

[55] Docket 322.
[56] Plaintiff cites abandonment, easement, lack of signage, etc.
[57] Docket 327.

*Nanouk v. United States*                                    Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*                              Page 13
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 13 of 15

occupants.[58] Moreover, the Government suggests that whether people were trespassing is relevant to the "usual course of events" analysis in determining whether the contamination was foreseeable, and the Court already has indicated that whether Plaintiff and her family were trespassing is a material fact in her nuisance claim.[59]

Plaintiff's Reply Brief reiterates that there was no illegal trespass and argues that a determination of land ownership is irrelevant based on the Government's implied consent to use and failure to enforce its trespass authority. Moreover, she argues that any alleged trespass is unrelated to whether the Government maintained a nuisance on its property, breached its duty of care as a landowner, or caused a trespass on Ms. Nanouk's allotment. The mere presence of the contamination, she argues, has caused Plaintiff to suffer damages, including depreciation in her property's value and her loss of use and enjoyment.[60]

As the Government has indicated, prejudice is not a concern, as this is a bench trial.[61] If it becomes relevant, the issue of trespass will be sorted out at trial.

### III. CONCLUSION

The Motions *in Limine* at Dockets **313, 314, 315, 316, 318, 320, and 322** are DENIED without prejudice.

---

[58] *Id.* at 11–12.
[59] Docket 324 at 10.
[60] Docket 346. Plaintiff's request that, if the Court permits the government to argue that she trespassed, she be "permitted to amend her Complaint to allege the government's pre-1990 failure to consider community usage during its risk assessment of contaminated sites in the 1980's [sic]" is an entirely new issue raised in the Reply, which treads into the mire of *res judicata*. Further briefing would be required to consider such an argument.
[61] Docket 327 at 10.

IT IS SO ORDERED this 27th day of December, 2023, at Anchorage, Alaska.

> /s/ Ralph R. Beistline
> RALPH R. BEISTLINE
> Senior United States District Judge

*Nanouk v. United States*  Case No. 3:15-cv-00221-RRB
Order Denying Motions *in Limine*  Page 15
Case 3:15-cv-00221-RRB   Document 348   Filed 12/27/23   Page 15 of 15